# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

Nº 22-CV-20 (AMD) (RER)

---

## CYNTIA ORE AND DAVID ROSAS

VERSUS

## H & C CLEANING CORP. AND JUAN PEDRO CHUC-TZUBAN

---

### REPORT & RECOMMENDATION

December 14, 2022

---

**TO THE HONORABLE ANN M. DONNELLY
UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs Cyntia Ore and David Rosas ("Ore" and "Rosas," collectively "Plaintiffs") brought this action against H & C Cleaning Corp. ("H & C Cleaning" or "Corporate Defendant") and Juan Pedro Chuc-Tzuban ("Chuc-Tzuban" or "Individual Defendant") (collectively "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq.*, and the New York Codes, Rules, and Regulations, 12 N.Y.C.R.R. § 142. (ECF No. 1 ("Compl.")). Currently before the Court is Plaintiffs' Motion for Default Judgment. (ECF No. 10). Your Honor referred this motion to me for a Report and Recommendation. (ECF Order dated 6/6/2022).

1

After carefully reviewing the record, and for the reasons set forth herein, I respectfully recommend that the Motion be granted in part and denied in part. I recommend that liability be imposed on H & C Cleaning but denied without prejudice as to Chuc-Tzuban in light of deficiencies in Plaintiffs' compliance with the Servicemembers Civil Relief Act, 50 U.S.C. § 3931(b)(1)(A), proof of proper service of the Summons and Complaint, and adherence to Local Civil Rule 55.2(c). However, should Plaintiffs cure these deficiencies and file proof thereof, and serve the Motion for Default Judgment and a copy of this Report and Recommendation upon the Individual Defendant, I respectfully recommend that the Motion be granted as to all Defendants.

## **BACKGROUND**

I.    Factual Allegations

H & C Cleaning is a New York corporation (Compl. ¶ 9) that performs cleaning services for commercial establishments like churches and schools. (Compl. ¶ 19; ECF No. 10-9 ("Ore Decl.") ¶ 11; ECF No. 10-11 ("Rosas Decl.") ¶ 11). It has its principal place of business at 147-28 90th Avenue, Apartment 2C, Jamaica, New York, 11435 ("Jamaica address"). (Compl. ¶ 10). Chuc-Tzuban is President of H & C Cleaning. (*Id.* ¶ 11). In this capacity, he owns, operates, and controls H & C Cleaning (*id.* ¶¶ 12–13), and acts on behalf of and in the interest of the corporation (*id.* ¶ 14). Defendants employed Plaintiffs as cleaners and manual laborers at locations serviced in Nassau County, New York. (Ore Decl. ¶¶ 12–13; Rosas Decl. ¶¶ 12–13). Plaintiffs allege that during their employment, H & C Cleaning had at least two employees handling goods or materials that moved in interstate commerce (Compl. ¶ 71), and its gross annual sales were not less than $500,000 (*id.* ¶ 71). Plaintiffs' job duties included cleaning, mopping, dusting, picking up garbage, vacuuming, and shoveling snow. (*Id.* ¶¶ 22, 39; Ore Decl. ¶ 13; Rosas Decl. ¶ 13). In carrying out

these duties, Plaintiffs "handled cleaning materials that originated outside of New York." (Compl. ¶ 70).

Ore's work shifts varied over the course of her employment. She did not sign in or out of her daily shifts nor did Defendants maintain records of the hours she worked (*id.* ¶ 23; Ore Decl. ¶¶ 14–15), so the following dates and times reflect her approximations (Compl. ¶¶ 24–29; Ore Decl. ¶¶ 16–21). From August 24, 2020 to August 30, 2020, Ore worked Monday through Friday from about 2:00 PM until about 6:00 PM, and on Sunday from about 5:00 PM until about 9:00 PM, for approximately twenty-four hours. (Compl. ¶ 24; Ore Decl. ¶ 16). From August 31, 2020 to September 13, 2020, Ore worked Monday through Friday from about 1:00 PM until about 10:00PM, and on Sunday from about 5:00 PM until about 9:00 PM, for approximately forty-nine hours each week. (Compl. ¶ 25; Ore Decl. ¶ 17). From September 14, 2020 to January 17, 2021, Ore worked Monday through Friday from about 1:00 PM until about 11:00 PM, and four hours on Sunday, for approximately fifty-four hours each week. (Compl. ¶ 26; Ore Decl. ¶ 18). From January 18, 2021 to May 30, 2021, Ore worked Monday through Friday from about 1:00 PM until about 1:00 AM, and four hours on Sunday, for approximately sixty-four hours each week. (Compl. ¶ 27; Ore Decl. ¶ 19). From May 31, 2021 to November 7, 2021, Ore worked Monday through Friday from about 12:00 PM until about 12:00 AM, for approximately sixty hours each week. (Compl. ¶ 28; Ore Decl. ¶ 20). Lastly, from November 8, 2021 to November 10, 2021, Ore worked Monday through Wednesday from about 12:00 PM until about 12:00 AM for approximately thirty-six hours. (Compl. ¶ 29; Ore Decl. ¶ 21). For this work, Ore was paid $12.50 per hour until about January 17, 2021, and then $13.00 per hour for the remainder of her employment. (Compl. ¶¶ 30–31; Ore Decl. ¶¶ 23–24).

Rosas's shifts also varied throughout his employment. Like Ore, he did not sign in or out of his daily shifts, nor did Defendants maintain records of the hours he worked (Compl. ¶ 40; Rosas Decl. ¶¶ 14–15), so the following dates and times reflect his approximations (Compl. ¶¶ 41–45; Rosas Decl. ¶¶ 16–20). From January 11, 2021 to January 17, 2021, Rosas worked Friday from about 12:00 PM until about 4:00 PM, and on Saturday and Sunday from about 9:00 AM until about 1:00 PM, for approximately twelve hours. (Compl. ¶ 41, Rosas Decl. ¶ 16). From January 18, 2021 to May 17, 2021, Rosas worked Monday through Friday from about 12:00 PM until about 4:00 PM, and on Saturday and Sunday from about 9:00 AM until about 1:00 PM, for approximately twenty-eight hours each week. (Compl. ¶ 42; Rosas Decl. ¶ 17). From May 18, 2021 to June 30, 2021, Rosas worked Monday through Sunday from about 12:00 PM until about 12:00 AM, for approximately eighty-four hours each week. (Compl. ¶ 43; Rosas Decl. ¶ 18). From July 1, 2021 until September 1, 2021, Rosas worked Monday through Friday and Sunday from about 7:00 PM until about 7:00 AM, for approximately seventy-two hours each week. (Compl. ¶ 44; Rosas Decl. ¶ 19). Lastly, from September 2, 2021 until November 10, 2021, Rosas worked Monday through Friday and Sunday from about 8:00 PM until about 3:00 AM, for approximately forty-two hours each week. (Compl. ¶ 45; Rosas Decl. ¶ 20). Rosas was paid $13.00 per hour throughout his entire employment. (Compl. ¶ 46; Rosas Decl. ¶ 22).

Chuc-Tzuban ran the day-to-day operations of H & C Cleaning during Plaintiffs' employment. (Compl. ¶ 62). He participated in the decision to hire and fire Plaintiffs (*id.* ¶¶ 54–55); decided Plaintiffs' job duties and supervised their performance on a daily basis (*id.* ¶¶ 15–16, 56–57); set Plaintiffs' hours and work schedule (*id.* ¶¶ 58–59); and decided how and how much Plaintiffs were paid (*id.* ¶¶ 14, 60–61).

Plaintiffs were not required to sign in or out of their daily shifts and Defendants did not maintain records of the days and times they worked. (*Id.* ¶¶ 23, 40). Plaintiffs regularly worked these shifts without uninterrupted meal breaks. (*Id.* ¶¶ 24–29, 41–45). Plaintiffs were paid straight-time for all hours worked (*id.* ¶¶ 32, 47), as Defendants did not pay them one-and-one-half times their regular pay rate or other overtime compensation when they worked more than forty hours per week. (*Id.* ¶¶ 34–35, 49–50). Moreover, Defendants failed to provide Plaintiffs with the statutory minimum wage (*id.* ¶¶ 33, 48); with one additional hour of pay for the days that they worked a spread of hours in excess of ten (*id.* ¶¶ 36, 51); with any type of wage notice (*id.* ¶ 52); or with complete and accurate paystubs (*id.* ¶ 53). Through this conduct, Plaintiffs allege that Defendants acted willfully and in bad faith with respect to Plaintiffs' rights under the FLSA and NYLL. (*Id.* ¶¶ 66, 77–78, 86–87, 91–92, 97–98, 102–03, 106–07).

## II.  Procedural History

Plaintiffs commenced this action on January 3, 2022. (Compl.). Over the following week, Plaintiffs served H & C Cleaning through the New York Secretary of State (ECF No. 5 ("Guyette Aff.")) and served Chuc-Tzuban through delivery to a person of suitable age and discretion—his cousin—as well as by mail. (ECF No. 6 ("Berg Aff.")). Both in-person delivery and mail were directed at the same Jamaica address that corresponds to Defendants' principal place of business. (Berg Aff.; Compl. ¶ 10). However, the process server described the location as Chuc-Tzuban's "dwelling house (usual place of abode) within the state" and his "[a]ctual place of residence." (Berg Aff.).

After Defendants failed to answer the Complaint or otherwise appear, Plaintiffs requested a Certificate of Default from the Clerk of Court for each Defendant (ECF No. 7), the Clerk of Court entered Defendants' default (ECF No. 8), and Plaintiffs subsequently filed a Motion for Default

Judgment (ECF No. 10). Plaintiffs then served copies of Plaintiffs' Notice of Motion for Default Judgment, Plaintiffs' Memorandum of Law in Support, Declaration of Keith E. Williams, Esq. in Support, and Exhibits A through J[1] on both Defendants by first-class mail, in a single envelope, addressed to: Juan Pedro Chuc-Tzuban, H & C Cleaning Corp., 147-28 90th Avenue, Apt. 2C, Jamaica, New York 11435. (ECF No. 10-2).

Now before the Court is this Motion for Default Judgment on Plaintiffs' claims for (1) unpaid overtime wages under the FLSA and NYLL; (2) unpaid minimum wages under the NYLL; (3) unpaid spread-of-hours wages under the NYLL; (4) liquidated damages; (5) wage notice and statement violation under the NYLL; (6) pre- and post-judgment interest; and (7) an automatic fifteen percent increase with respect to unpaid damages. (ECF No. 10-1 ("Pls.' Mem.") at 18–32).

## DISCUSSION

I.    Default Judgment Legal Standard

Rule 55 of the Federal Rules of Civil Procedure requires "a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). Under the first step, a court clerk must enter a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The second step requires the plaintiff to request a default judgment. Fed. R. Civ. P. 55(b).

Default judgments are "generally disfavored" by the Second Circuit, which has an "oft-stated preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–

---

[1] Exhibits included (A) Summons and Complaint (ECF No. 10-4); (B) Certificate of Service (ECF No. 10-5); (C) Affidavit of Service (ECF No. 10-6); (D) Default Letter (ECF No. 10-7); (E) Certificate of Default (ECF No. 10-8); (F) Declaration by Plaintiff Ore (ECF No. 10-9); (G) Damages Charts for Plaintiff Ore (ECF No. 10-10); (H) Declaration by Plaintiff Rosas (ECF No. 10-11); (I) Damages Charts for Plaintiff Rosas ((ECF No. 10-12); and (J) Proposed Order (ECF No. 10-13).

96 (2d Cir. 1993). As such, a "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). Nonetheless, when a party defaults, a court must accept the plaintiff's well-pleaded factual allegations as true. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). However, "[p]laintiffs bear the burden of alleging *specific* facts which would allow the Court to infer defendants' liability rather than mere 'labels and conclusions' or a 'formulaic recitation of the elements.'" *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)), *adopted by* 2015 WL 5561180 (Sept. 21, 2015). As such, "[a] default does not establish conclusory allegations, nor does it excuse any defects in the plaintiffs' pleading." *Lin v. Quality Woods, Inc.*, No. 17-CV-3043 (DLI) (SJB), 2021 WL 4129151, at *7 (E.D.N.Y. Aug. 10, 2021) (quoting *Mateo v. Universal Language Corp.*, No. 13-CV-2495, 2015 WL 5655689, at *4, 6–7 (E.D.N.Y. Sept. 4, 2015)). Moreover, the court must determine whether the plaintiff's factual allegations, taken as true, constitute a valid claim upon which relief can be granted. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citing *Au Bon Pain*, 653 F.2d at 65).

A court must also "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). In other words, courts need not accept allegations regarding damages to be true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Instead, a plaintiff must establish "that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id.* at 158–59. Indeed, "the court must ensure that there is a basis for the damages specified in a default judgment." *Fustok v. ContiCommodity Servs., Inc.*,

873 F.2d 38, 40 (2d Cir. 1989). A court may hold a hearing on the amount of damages, Fed. R. Civ. P. 55(b)(2), or, in lieu of a hearing, may instead rely on "detailed affidavits or documentary evidence." *Fustok*, 873 F.2d at 40. In FLSA cases, when wage and hour records are unavailable, "the plaintiff may rely on [their] recollection to approximate the wages owed." *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR) (RER), 2021 WL 4464121, at *5 (E.D.N.Y. Aug. 20, 2021) (citing *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 332–33, 335 (S.D.N.Y. 2005)), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021). Damages are "limited to the amount and type established in the complaint." *Miguel v. Mi Bella Puebla Corp.*, 16-CV-01593 (SJ) (RER), 2017 WL 4838820, at *2 (E.D.N.Y. Sept. 6, 2017) (citing Fed. R. Civ. P. 54(c)), *adopted by* 2017 WL 4838761 (Oct. 24, 2017); *see also Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007).

II.    Deficiencies in Compliance with Statutory and Procedural Requirements Warrant Denying Motion for Default Judgment With Respect to Chuc-Tzuban

When seeking default judgment, plaintiffs are bound by federal statutes, federal rules, and a court's local rules. *See Mickalis Pawn Shop,* 645 F.3d at 138 ("A default judgment is 'void' if it is rendered by a court that lacks jurisdiction over the parties."); *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14 CV 5474, 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015)) ("[A] motion for default judgment will not be granted unless the party making that motion adheres to certain local and individual rules.").

A.    Plaintiffs Did Not Comply with the Servicemembers Civil Relief Act

Under the Servicemembers Civil Relief Act, plaintiffs seeking default judgment must "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931(b)(1)(A); *see Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18,

8

2012) (denying default judgment for failure to provide a nonmilitary affidavit pursuant to the Servicemembers Civil Relief Act); *Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022) ("[F]ailure to comply with [the Servicemembers Civil Relief Act] warrants denial of Plaintiff's motion for default."), *adopted by* 2022 WL 3647586 (Aug. 24, 2022); *Bhagwat*, 2015 WL 13738456, at *1. "The affidavit must provide the specific facts necessary to support the conclusion stated, and may not be based on conclusory statements or on 'information and belief.'" *Uribe v. Nieves*, No. 17-CV-5155 (RRM) (RER), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018) (citing 50 U.S.C. § 3931(b)(1) and collecting cases in which statements based on "information and belief" were deemed insufficient). Further, "[t]he non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgement [sic] is to be entered." *J&J Sports Prods., Inc. v. Vergara*, No. 19-CV-2382 (FB) (VMS), 2020 WL 1034393, at *6 (E.D.N.Y. Feb. 6, 2020) (quoting *Pruco Life Ins. Co. of N.J. v. Estate of Locker*, No. 12-CV-882 (ENV) (RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)), *adopted by* 2020 WL 1031756 (Mar. 3, 2020); *see also Sudilovskiy v. City WAV Corp.*, No. 22-CV-469 (DG), 2022 WL 4586307, at *3 (E.D.N.Y. Sept. 29, 2022) ("[A] proper non-military affidavit must be based on facts adduced from an investigation conducted after a defendant defaults."). Importantly, "[t]he court lacks the power to excuse compliance with th[is] statute." *Sudilovskiy*, 2022 WL 4586307, at *3 (quoting *Uribe*, 2018 WL 4861377, at *1).

Here, the process server's limited investigation into defendant's military service is insufficient to show compliance with the Act. Plaintiffs' assertion that Chuc-Tzuban is not in the military service rests solely on the process server's statement that "[they] asked the person spoken to whether defendant was in active military service . . . and received a negative reply." (Berg. Aff.).

Plaintiffs' counsel then relies on this statement to attest that "[u]pon information and belief, Chuc-Tzuban is not . . . in the military . . . ." (ECF No. 10-3, Declaration of Keith E. Williams, Esq. ("Williams Decl.") ¶ 5). No additional facts are provided to support this claim, nor is there any indication that Plaintiffs investigated Chuc-Tzuban's military status beyond the process server's question to the person of suitable age and discretion to whom they delivered the Summons and Complaint. (Berg. Aff.). This is enough to warrant denial of the Motion. *See Sudilovskiy*, 2022 WL 4586307, at *3 (concluding that the "process server's statement that he was told by the . . . person with whom he left the summons and complaint that [defendant] was not in the military service is . . . insufficient").

B.   Plaintiffs Did Not Provide Sufficient Proof of Proper Service

Under Rule 4 of the Federal Rules of Civil Procedure, service of a summons and complaint is proper when it complies with the state law that governs "where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). In New York, a corporation may be served through delivery to the Secretary of State as the corporation's agent. N.Y. C.P.L.R. § 311; N.Y. Bus. Corp. Law § 306. Thus, H & C Cleaning was properly served through delivery to its authorized agent at the New York Secretary of State. (Guyette Aff.). Service to an individual, however, requires delivering the summons and complaint "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" as well as mailing it to their last known residence or actual place of business. N.Y. C.P.L.R. § 308(2). If mailed to their place of business, the summons must be sent via first-class mail "in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served." *Id.*

Although, an affidavit of service is generally *prima facie* evidence that service was proper, "[i]n addition to effecting proper service, a plaintiff seeking a default judgment must offer proof of proper service." *G&G Closed Cir. Events, LLC v. Narine*, No. 20-CV-4271 (MKB) (RML), 2021 WL 7906548, at *3 (E.D.N.Y. Dec. 13, 2021) (citing Fed. R. Civ. P. 4(l)(1); N.Y. C.P.L.R. § 3215(f); 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1130 (4th ed. 2021)), *adopted by* 2022 WL 950449 (Mar. 30, 2022)). When an affidavit does not disclose certain facts, a court may find that it does not suffice to establish proper service. *Id.* (finding proof of service was insufficient because the affidavit of service did not establish that the delivery address was the defendant's actual dwelling when the "[p]laintiff [did] not offer[] independent proof that the address of service was [defendant's] dwelling at the time of service" and "the [affidavit of service did] not indicate whether the process server had personal knowledge of that fact"); *see also Romero v. Dazzling Events Inc.*, No. 19-CV-5133 (AMD) (LB), 2020 WL 13577336, at *8 (E.D.N.Y. Dec. 30, 2020) (finding affidavit of service insufficient when it "contain[ed] no details to support how the server confirmed that the property was [the defendant's] correct dwelling or usual place of abode"), *adopted by* 2021 WL 242188 (Jan. 25, 2021); *Joe Hand Promotions, Inc. v. Dilone*, No. 19-CV-871 (NGG) (RML), 2020 WL 2572271, at *3 (E.D.N.Y. Jan. 23, 2020) ("It is plaintiff's burden to prove that service was proper and '[c]onclusory statements that service was properly effected are insufficient to carry that burden.'") (quoting *Almonte v. Suffolk Cty.*, No. 10-CV-5398, 2012 WL 1820581, at *2 (E.D.N.Y. May 16, 2012) (citations omitted), *adopted by* 2012 WL 2357369 (June 11, 2012), *aff'd*, 531 F. App'x 107 (2d Cir. 2013)), *adopted in part by* 2020 WL 1242757 (Mar. 16, 2020).

Here, proof of proper service is inadequate as to Chuc-Tzuban. Although the process server claims that Chuc-Tzuban was served through delivery to a person of suitable age and discretion at

the defendant's dwelling place, more evidence is needed to establish that Chuc-Tzuban resided at the Jamaica address for service by delivery or mail to this location to be proper. Although Plaintiffs allege that the Jamaica address corresponds to H & C Cleaning's principal place of business (Compl. ¶ 10; Ore Decl. ¶ 6; Rosas Decl. ¶ 6), the Complaint and Plaintiffs' declarations were markedly silent as to the location of Chuc-Tzuban's residence. Thus, the only indication that the Jamaica address corresponds to Chuc-Tzuban's dwelling is the affidavit of service that describes the address as Defendant's "dwelling house (usual place of abode within the state)" and "[a]ctual [p]lace of [r]esidence." (Berg. Aff.). However, neither the Plaintiffs nor the process server provided any additional facts, details, or observations to establish that Chuc-Tzuban resides or resided at this location. Therefore, the affidavit of service does not establish that Chuc-Tzuban resides at this address. *See Romero*, 2020 WL 13577336, at *8. Furthermore, although delivery to a person of suitable age and discretion and by first-class mail to the defendant's actual place of business would constitute proper service, the summons and complaint would need to be mailed first-class. In this case, although they were mailed to the Jamaica address in an envelope marked "personal and confidential" that "did not indicate . . . that [it] was from an attorney or concerned an action against the defendant" (Berg. Aff.), there is no basis for the court to conclude that service was made by first-class mail.

Accordingly, I recommend that Plaintiffs' Motion for Default Judgment be denied as to Individual Defendant, with leave to amend proof of service. *See G&G Closed Cir. Events, LLC*, WL 7906548, at *3 (recommending default judgment be denied with leave to amend when proof of service was insufficient); *see also* Fed. R. Civ. P.4(l)(3) ("Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended.")

### C.  Plaintiffs Did Not Comply With Local Civil Rule 55.2(c)

Local Civil Rule 55.2(c) requires all papers submitted in support of a motion for default judgment to "be mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)." Loc. Civ. R. 55.2(c). A plaintiff's failure to comply with Local Civil Rule 55.2(c) is enough to warrant denial of the motion. *See, e.g.*, *United States v. Hamilton*, No. 18-CV-2011 (ADS) (SIL), 2019 WL 6830318, at *3 (E.D.N.Y. Nov. 26, 2019), *adopted by* 2019 WL 6828276 (Dec. 13, 2019) (denying motion for default judgment without prejudice for failure to comply with Local Civil Rule 55.2(c)); *Allstate Ins. Co. v. Abramov*, No. 16-CV-1465 (AMD) (SJB), 2019 WL 1177854, at *3 (E.D.N.Y. Feb. 21, 2019), *adopted by* 2019 WL 1172381 (Mar. 13, 2019) (same).

"Generally, failure to show that an individual defendant was mailed the default judgment motion papers at his or her last known residence warrants denying the motion against the individual." *Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR) (VMS), 2020 WL 6370148, at *8 (E.D.N.Y. Aug. 11, 2020), *adopted by* 2020 WL 5105063 (Aug. 31, 2020). "[C]ourts look to the pleading or motion papers to determine whether plaintiff properly mailed its default judgment papers in accordance with Local Rule 55.2(c)." *Vergara*, WL 1034393, at *5 (citations omitted); *see id.* ("Without any representation in the record that [the address to which motion papers were sent] is [defendant's] last known residence, the [c]ourt is left questioning whether [defendant] properly received notice of the motion for default judgment against him."); *see also Abramov*, 2019 WL 1177854, at *4 (relying on information provided in amended complaint to determine that address for mailing was improper); *Feng Lin v. Quality Woods, Inc.*, No. 17-Civ.-3043 (DLI) (SJB), 2019 WL 1450746, at *7 (E.D.N.Y. Jan. 28, 2019) (relying on

information in memorandum of law and complaint to determine that address for mailing was improper). Mailing default judgment papers to an individual defendant's business address does not satisfy Local Civil Rule 55.2(c). *See, e.g.*, *Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CIV-3372 (CBA) (VMS), 2020 WL 3002362, at *4 (E.D.N.Y. Feb. 20, 2020) (denying motion for default judgment against individual in part for mailing motion papers to business address), *adopted by* 2020 WL 1270891 (Mar. 17, 2020); *Abramov*, 2019 WL 1177854, at *3 ("[W]hen the plaintiff seeks default against [an] individual, the motion for default judgment must be served at the person's last known residence. By using the business address to serve the motion, [Plaintiff] failed to comply with [Local Rule 55.2(c)]."); *Miss Jones, LLC v. Viera*, No. 18-CV-1398 (NGG) (SJB), 2019 WL 926670, at *4 (Feb. 5, 2019), *adopted by* 2019 WL 955279 (Feb. 26, 2019).

Here, Plaintiffs have not complied with Local Civil Rule 55.2(c) because they failed to establish that the motion papers were mailed to Chuc-Tzuban's last known residence. Although Plaintiffs served the motion papers by mail to the Jamaica address (ECF No. 10-2) in an envelope addressed to Chuc-Tzuban and H & C Cleaning, because the Complaint only describes this location as Chuc-Tzuban's place of business and is silent as to where Chuc-Tzuban resides (Compl. ¶ 10), this mailing is insufficient for purposes of compliance with Local Civil Rule 55.2(c).[2] Although the attorney declaration and memorandum of law submitted with Plaintiffs'

---

[2] Moreover, Plaintiffs erred in serving both Individual and Corporate Defendants with the Motion for Default Judgment through a single mailing. *See O'Callaghan v. Sifre*, 242 F.R.D. 69, 74 (S.D.N.Y. 2007) ("Under Rule 5(a) [of the Federal Rules of Civil Procedure], all papers must be served "upon each of the parties." Nowhere do the Rules permit two separate parties to be served with a single copy of a pleading, absent their consent. If, as it appears, this is what [Plaintiff] did, then service on the Defendants was improper, and a default judgment should not be granted."); *see also Nesterov v. Kvadro S. Corp.*, No. 18-CV-7200 (MKB) (SJB), 2021 WL 1236029, at *1 (E.D.N.Y. Mar. 11, 2021), *adopted by* 2021 WL 1238707 (Apr. 2, 2021) ("Service must be accomplished upon each and every defendant separately[.]"). Given that courts in this district generally demand strict procedural compliance and prefer to resolve disputes on their merits, Your Honor could deny this Motion with respect to both Defendants without prejudice, due to Plaintiffs' failure to comply with Local Civil Rule 55.2(c) and improper service of the Motion for Default Judgment to multiple parties in a single envelope.

Motion for Default Judgment indicate that the Jamaica address corresponds to Chuc-Tzuban's "dwelling house" and "usual place of abode," they rely exclusively on the process server's affidavit for this proposition. (*See* Williams Decl. ¶ 20; Pls.' Mem. at 2). Unfortunately, as mentioned above, the process server offered insufficient facts and details to establish that Chuc-Tzuban resides at that location. Although the address to which the motion papers were mailed corresponds to Chuc-Tzuban's place of business, mailing default judgment papers to an individual defendant's place of business is insufficient for the purposes of Local Civil Rule 55.2(c).

***

Based on these deficiencies, I respectfully recommend that the Motion for Default Judgment be denied with respect to Chuc-Tzuban without prejudice to renewal upon proof of compliance with the Servicemembers Civil Relief Act, Federal Rule of Civil Procedure 4, and Local Civil Rule 55.2(c).

III.     Liability Under the FLSA and NYLL

Plaintiffs seek default judgment on their FLSA and NYLL claims. (Pls.' Mem. at 1). To succeed on a claim under the FLSA and NYLL, plaintiffs must establish that a non-exempt employer-employee relationship existed between the parties. *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848 (RRM) (RER), 2022 WL 4646866, at *4 (E.D.N.Y. Aug. 29, 2022) (citations omitted), *adopted by* 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022). Additionally, plaintiffs must show that they "performed work for which [they were] not properly compensated." *Santillan v. Henao*, 822 F. Supp. 2d 284, 293–94 (E.D.N.Y. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)).

Due to the close alignment between the FLSA and NYLL standards, courts in this Circuit typically apply the same analysis to claims under both laws, such that when a court finds liability

under one, it routinely imposes liability under the other. *Jaime v. David & Son's Constr. Corp.*, No. CV-17-1499 (ADS) (ARL), 2018 WL 4863658, at *4 (E.D.N.Y. Aug. 30, 2018), *adopted by* 2018 WL 4863594 (Sept. 28, 2018); *see also, e.g.*, *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012) (applying reasoning from FLSA analysis to impose liability under the NYLL); *Marcus v. Lominy*, No. 18 Civ. 1857 (NSR), 2022 WL 493688, at *13 (S.D.N.Y. Feb. 17, 2022) ("[B]ecause the NYLL . . . mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime, the Court's ensuing analysis . . . will solely focus on federal law but applies equally to . . . claims under the FLSA and the NYLL.").

A.  Defendants Are Employers Under the FLSA and NYLL

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee" 29 U.S.C. § 203(d), wherein a "person" can be an individual or "any organized group of persons," including a corporation 29 U.S.C. § 203(a). The FLSA applies to employees who were "personally engaged in interstate commerce or in the production of goods for interstate commerce" (i.e., individual coverage) and to employees who "[were] employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce" (i.e., enterprise coverage). *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011) (citation omitted). Because Plaintiffs do not allege that they were personally engaged in interstate commerce or in the production of goods for interstate commerce, this Court need only consider the applicability of enterprise coverage. *See Lin*, 2021 WL 4129151, at *10 (concluding that plaintiff did not meet his burden of establishing individual coverage under FLSA when he did "not allege[] that he *personally* was either engaged in commerce or in the production of goods for commerce").

*i.*      *H & C Cleaning*

For purposes of the FLSA, an enterprise is engaged in commerce when it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done" of at least $500,000. *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (citing 29 U.S.C. § 203(s)(1)(A)(i)-(ii)). "The handling of items that have 'undoubtedly moved in interstate commerce' to their place of use is sufficient to allege enterprise coverage." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK) (SJB), 2022 WL 940504, at *5 (E.D.N.Y. Jan. 25, 2022) (citing *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)), *adopted by* 2022 WL 939769 (Mar. 29, 2022). Courts have found that because cleaning supplies move in interstate commerce, enterprises whose employees use these products in their work are covered by the FLSA. *Rodriguez*, 784 F. Supp. 2d at 121; *see also, e.g.*, *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 88 (E.D.N.Y. 2010) (FLSA applied when custodian handled cleaning products that "ha[d] been moved in or produced for commerce"); *Boekemeier v. Fourth Universalist Soc'y*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000)) (FLSA applied when assistant building engineer handled "janitorial goods that . . . moved in commerce"); *Archie,* 997 F. Supp. at 530 (FLSA applied when sanitation worker used bags, brooms, shovels, and pails that "undoubtedly moved in interstate commerce to New York City").

Here, H & C Cleaning is an enterprise employer that is subject to the FLSA. Plaintiffs allege that "H & C Cleaning had, and continues to have, two (2) or more employees handle goods or materials that have moved in interstate commerce" and that Plaintiffs themselves "handled cleaning materials that originated outside of New York." (Compl. ¶ 70). Plaintiffs also allege that "[u]pon information and belief, the gross annual volume of sales made or business done by H &

C Cleaning in 2020 and 2021 was not less than $500,000.00." (*Id.* ¶ 71). These allegations, conclusory though they may be, meet the pleading requirement for enterprise liability under the FLSA. *See Reyes-Fana v. Moca Grocery NY Corp.*, No. 21-CV-4493 (AMD) (RER), 2022 WL 5428688, at *5 (E.D.N.Y. Aug. 16, 2022) (finding that similar "conclusory allegations" were enough to establish enterprise coverage when the court could infer that the enterprise was engaged in interstate commerce), *adopted by* 2022 WL 4094241 (Sept. 7, 2022); *Cardoza*, 2015 WL 5561033, at *3–4 (finding that plaintiffs' "somewhat conclusory" allegations that defendant was "engage[d] in interstate commerce, produce[d] goods for interstate commerce, and/or handle[d], [sold], or otherwise work[ed] on goods or materials that have been moved in or produced for such commerce by any person" and that "upon information and belief" defendants' annual gross revenue exceeded $500,000 were sufficient to demonstrate that defendant was an enterprise engaged in commerce under FLSA). Consequently, H & C Cleaning is an employer subject to liability under the FLSA and NYLL. *See Diaz*, 2022 WL 4646866, at *5 ("Since enterprise coverage has been found, the Corporate Defendants are employers subject to liability under the FLSA and NYLL.").

### ii.    *Chuc-Tzuban*

To determine whether individual defendants are subject to FLSA liability, courts use the "economic reality" test and consider a range of non-dispositive factors such as "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Cardoza*, 2015 WL 5561033, at *2 (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Brock v. Superior Care,* 840 F.2d

1054, 1059 (2d Cir.1988) (noting that none of the factors used in a variation of this economic reality test are dispositive and that "the test is based on a totality of the circumstances").

Here, Plaintiffs allege that Chuc-Tzuban participated in the decision to hire and fire Plaintiffs (Compl. ¶¶ 54–55). They also allege that Chuc-Tzuban "decided the job duties that Plaintiffs performed on a daily basis" and "supervised [their] job duties and responsibilities," as well as set their schedule and decided their hours. (*Id.* ¶¶ 56–59). Insofar as payment, Plaintiffs allege that Chuc-Tzuban "decided the manner in which [they] were paid" as well as their compensation. (*Id.* ¶¶ 60–61). Such allegations, coupled with Defendants' default, suffice to establish that Chuc-Tzuban qualifies as Plaintiffs' "employer" under the FLSA and NYLL. Therefore, he would be liable here and the Court could impose joint and several liability on him with H & C Cleaning if aforementioned statutory and procedural deficiencies were resolved. *See Cardoza*, 2015 WL 5561033, at *2 (finding that similar allegations combined with an individual defendant's default established the defendant as an employer under the FLSA and NYLL, and imposing joint and several liability on the corporate and individual defendants); *Rodriguez*, 784 F. Supp. 2d at 128–29 (concluding that allegations that an individual had authority over personnel and payroll decisions and authority to hire and fire employees were adequate to impose joint and several liability).

B.  Plaintiffs Are Non-Exempt Employees Under the FLSA and NYLL

The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see also* N.Y. Lab. Law § 651(5) (defining an employee as "any individual employed or permitted to work by an employer in any occupation"). Certain categories of employees are "exempt" from FLSA and NYLL overtime and minimum wage requirements. *See* 29 U.S.C. § 213; N.Y. Lab. Law § 651(5). "Federal courts apply the same standards to interpreting

the exemptions under the FLSA as they do to the exemptions under the NYLL." *Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 527 (E.D.N.Y. 2015). However, "the burden of invoking these exemptions rests upon the employer." *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n.11 (1960)). In defaulting, Defendants have failed to invoke any exemptions. Further, Plaintiffs allege that "none of the [relevant] exemptions apply to [them] because they did not meet the requirements for coverage under the exemptions during . . . their employment." (Compl. ¶¶ 76, 85). Thus, the statutory exemptions do not apply to Plaintiffs.

C. <u>Plaintiffs Were Inadequately Compensated</u>

Both the FLSA and NYLL require employers to pay their employees "a certain minimum wage, as well as overtime wages of one-and-one-half times their regular rate of pay for all hours worked in excess of forty hours in any given week." *Santos v. Cancun & Cancun Corp*, No. 21-CV-0192L (DH) (RER), 2022 WL 1003812, at *5 (E.D.N.Y. Feb. 17, 2022) (citing 29 U.S.C. § 207(a), N.Y. Lab. Law § 651, 12 N.Y.C.R.R. § 142-2.2). In 2020, the minimum wage rate for Nassau County, New York was $13.00 per hour until December 31, 2020, when it increased to $14.00. N.Y. Lab. Law § 652. Because Ore's hourly rate began at $12.50 and only increased to $13.00 on January 17, 2021, and Rosas' hourly rate was $13.00 throughout his entire employment in 2021, Plaintiffs have demonstrated that they were both paid below New York's minimum wage throughout their employment. (Compl. ¶¶ 30–31, 46). Plaintiffs have also adequately pleaded that they did not receive overtime compensation when Ore worked more than forty hours per week between August 31, 2020 and November 7, 2021 (*id.* ¶¶ 25–28) and when Rosas worked more than forty hours per week between May 17, 2021 and November 10, 2021 (*id.* ¶¶ 43–45), but rather, they both received their regular rates for all hours worked (*id.* ¶¶ 32, 46).

As such, Defendants failed to pay them overtime compensation as required by the FLSA or the NYLL.

\*\*\*

Accordingly, I respectfully recommend that default judgment be granted on Plaintiff's FLSA and NYLL claims. Although liability is joint and several, due to the deficiencies described above, I do not recommend imposing liability on Chuc-Tzuban at this time.

## IV.    Damages

Plaintiffs seek damages including: (A) unpaid minimum wages; (B) unpaid overtime wages; (C) unpaid spread-of-hours; (D) liquidated damages; (E) statutory damages for failure to provide wage statements and notices; (F) prejudgment and post judgment interest; and (G) an automatic fifteen percent increase with respect to unpaid damages. (Pls.' Mem. at 12–23). For the reasons set forth below, I respectfully recommend that Ore be awarded a total of $41,179.38 in damages, comprised of: $3,311 in unpaid minimum wages, $8,188 in unpaid overtime wages, $2,982 in unpaid spread-of-hours wages, $14,481 in liquidated damages, $10,000 in statutory damage, $2,217.38 in pre-judgment interest plus $3.57 per diem until the date that judgment is entered, and post-judgment interest in accordance with 28 U.S.C. § 1961; and that Rosas be awarded $26,043.03, comprised of: $2,088 in unpaid minimum wages, $4,053 in unpaid overtime wages, $1,372 in unpaid spread-of-hours wages, $7,513 in liquidated damages, $10,000 in statutory damages, $1,017.03 in pre-judgment interest plus $1.85 per diem until the date that judgment is entered, and post-judgment interest in accordance with 28 U.S.C. § 1961.

Although Plaintiffs have established Defendants' liability under both the FLSA and the NYLL, they "are not entitled to recover twice for the same injury." *Charvac v. M & T Project Managers of New York, Inc.*, 12-CV-05637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17,

2015) (quoting *Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010)), *adopted by* 2015 WL 5518348 (Sept. 17, 2015). "[W]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages[.]" *Id.* (quoting *Jiao v. Shi Ya Chen*, No. 03 Civ. 0165 (DF), 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)). "Thus, to the extent that plaintiffs' allegations establish claims under both state and federal law, the law providing the greatest recovery will govern." *Id*. Because the earliest alleged violation occurred in August 2020 and the Complaint was filed in January 2022 (Compl. ¶¶ 20, 37; Ore Decl. ¶ 12; Rosas Decl. ¶ 12), the two-year FLSA and six-year NYLL statutory periods cover all of Plaintiffs' wage claims during the entirety of their employment, 29 U.S.C. § 255(a); N.Y. Lab. Law §§ 198(3), 663(3). Here, the NYLL provides the greatest recovery because it provides a higher minimum wage and allows plaintiffs to recover "one hour's pay at the basic minimum hourly wage rate" when a shift exceeds ten hours in one day, N.Y.C.R.R. tit. 12, § 142–2.4. As such, I respectfully recommend awarding damages under the NYLL.

With respect to the hours Plaintiffs worked, "in an FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Rodriguez*, 784 F. Supp. 2d at 126 (quoting *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08 Civ. 6071 (SAS) (AJP), 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009)), *adopted by* 2009 WL 513371 (Feb. 27, 2009)); *Jemine*, 901 F. Supp. 2d at 376 ("where the employer has defaulted, [as here, the employees'] recollection and estimate of hours worked are presumed to be correct") (citations omitted). Here, the sworn declarations that Plaintiffs submitted describing their schedules, the hourly rates they were paid, and total estimated hours they worked (Ore Decl. ¶¶ 16–22; Rosas Decl. ¶¶ 16–21; Compl. ¶¶ 24–29, 41–45), provide sufficient evidence for the Court to calculate

damages, *see Santos*, 2022 WL 1003812, at *6 ("Plaintiff has submitted a declaration that describes, inter alia, dates of employment, hours worked per week, and wages paid, which is sufficient to calculate damages.").

A. Unpaid Minimum Wages

Plaintiffs seek damages for unpaid minimum wages under the NYLL. (Compl. ¶¶ 89–94; Pls.' Mem. at 16–17). The Court calculates unpaid minimum wages owed to Plaintiffs "by subtracting the hourly rate paid to Plaintiffs each week from New York's minimum wage rate." *Rodriguez*, 784 F. Supp. 2d at 126. The difference is "multiplied by . . . the number of hours plaintiff worked each week," which is then "multiplied by . . . the number of weeks falling within" the relevant pay period. *Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *8 (E.D.N.Y. Mar. 12, 2014).

Based on Plaintiffs' estimated hours,[3] their reported wages, and the statutory minimum wage, the amount of unpaid minimum wages owed to Plaintiffs are calculated as follows:

---

[3] Because Plaintiff Ore's employment spanned two statutory minimum wages and Rosas's schedule routinely changed mid-pay period, the pay periods used here vary slightly from the periods described in the Factual Allegations (and detailed in the Complaint and Plaintiff Declarations). However, the number of hours and weeks worked remain consistent throughout.

| Pay Period | Actual Regular Hourly Rate | Applicable Statutory Minimum Wage | Difference (Stat. Min. – Reg. Hr. Rate) | Hours worked per Week | Weeks Worked | Unpaid Minimum Wages |
|---|---|---|---|---|---|---|
| **Plaintiff Ore** | | | | | | |
| 8/24/2020 – 8/30/2020 | $12.50 | $13.00 | .50 | 24 | 1 | $12 |
| 8/31/2020 – 9/13/2020 | $12.50 | $13.00 | .50 | 49 | 2 | $49 |
| 9/14/2020 – 12/27/2020 | $12.50 | $13.00 | .50 | 54 | 15 | $405 |
| 12/28/2020 – 12/30/2020 | $12.50 | $13.00 | .50 | 30 | 1 | $15 |
| 12/31/2020 – 1/3/2021 | $12.50 | $14.00 | $1.50 | 24 | 1 | $36 |
| 1/4/2021 – 1/17/2021 | $12.50 | $14.00 | $1.50 | 54 | 2 | $162 |
| 1/18/2021 – 5/30/2021 | $13.00 | $14.00 | $1.00 | 64 | 19 | $1,216 |
| 5/31/2021 – 11/7/2021 | $13.00 | $14.00 | $1.00 | 60 | 23 | $1,380 |
| 11/8/2021 – 11/10/2021 | $13.00 | $14.00 | $1.00 | 36 | 1 | $36 |
| **Total unpaid minimum wages** | | | | | | **$3,311** |
| **Plaintiff Rosas** | | | | | | |
| 1/15/2021 – 1/17/2021 | $13.00 | $14.00 | $1.00 | 12 | 1 | $12 |
| 1/18/2021 – 5/16/2021 | $13.00 | $14.00 | $1.00 | 28 | 17 | $476 |
| 5/17/2021 – 5/23/2021 | $13.00 | $14.00 | $1.00 | 76 | 1 | $76 |
| 5/24/2021 – 6/27/2021 | $13.00 | $14.00 | $1.00 | 84 | 5 | $420 |
| 6/28/2021 – 7/4/2021 | $13.00 | $14.00 | $1.00 | 72 | 1 | $72 |
| 7/5/2021 – 8/29/2021 | $13.00 | $14.00 | $1.00 | 72 | 8 | $576 |
| 8/30/2021 – 9/5/2021 | $13.00 | $14.00 | $1.00 | 57 | 1 | $57 |
| 9/6/2021 – 11/7/2021 | $13.00 | $14.00 | $1.00 | 42 | 9 | $378 |
| 11/8//2021 – 11/10/2021 | $13.00 | $14.00 | $1.00 | 21 | 1 | $21 |
| **Total unpaid minimum wages** | | | | | | **$2,088** |

Accordingly, Ore is entitled to recover $3,311 and Rosas is entitled to recover $2,088 for the pay periods in which their hourly rates were less than the statutory minimum wage.

### B.  Unpaid Overtime Wages

Plaintiffs seek unpaid overtime wages under the FLSA and NYLL. (Compl. ¶¶ 67–88; Pls.' Mem. at 14–16). Under these laws, an employer must "pay [their] employees a [fifty] percent premium for their overtime hours—that is, the hours in excess of [forty] that they worked in each work week." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 90 (E.D.N.Y. 2012) (citing 29 C.F.R. § 778.105; 12 N.Y.C.R.R. § 146-1.4); *see also* 29 U.S.C. § 207(a) (imposing overtime rate

at "not less than one and one-half times the regular rate at which he is employed"); 12 N.Y.C.R.R. § 142-2.2 (requiring that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA). Importantly, "[t]he FLSA provides that overtime rates shall be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater." *Bedasie v. Mr. Z Towing, Inc.*, No. 13-CV-5453 (CLP), 2017 WL 1135727, at *42 (E.D.N.Y. Mar. 24, 2017) (citing 29 U.S.C. § 207; 29 C.F.R. § 778.107). Accordingly, where an employee's regular hourly rate "is below the required minimum wage, the employee's overtime rate is calculated using the required minimum wage as the 'regular rate.'" *Peralta*, 2014 WL 988835, at *7 (citation omitted).

As noted, Ore has sufficiently alleged that she worked nine hours overtime per week for two weeks from August 31, 2020 to September 13, 2020; fourteen hours overtime per week for eighteen weeks from September 14, 2020 to January 17, 2021; twenty-four hours overtime per week for nineteen weeks from January 18, 2021 to May 30, 2021; and twenty hours overtime per week for twenty-three weeks from May 31, 2021 to November 7, 2021. (*See* Compl. ¶¶ 25–28; Ore Decl. ¶¶ 17–20). Likewise, Rosas has sufficiently alleged that he worked forty-four hours overtime per week for five weeks from May 24, 2021 to June 27, 2021; thirty-two hours overtime per week for nine weeks from June 28, 2021 to August 29, 2021; seventeen hours overtime for one week from August 30, 2021 to September 5, 2021; and two hours overtime per week for ten weeks from September 6, 2021 to November 7, 2021. (*See* Compl. ¶¶ 43–45; Rosas Decl. ¶¶ 18–20). Accordingly, Ore and Rosas are entitled to overtime wages for the hours they worked in excess of a forty-hour work week during these pay periods.

Here, the Court calculates the unpaid overtime premium owed to each Plaintiff for each pay period by dividing the statutorily mandated minimum wage in half to determine what each Plaintiff

was underpaid for each hour that they were entitled to receive time and a half pay. Because Plaintiffs' regular hourly rates were less than the statutory minimum for the entirety of their employment, the Court calculates the overtime premium owed using the required minimum wage. The Court's calculations are outlined below:

| Pay Period | Actual Regular Hourly Rate | Applicable Statutory Minimum Wage | Min. OT Premium (Stat. Min. Wage/2) | OT Hours per Week | Weeks Worked | Unpaid OT Wages |
|---|---|---|---|---|---|---|
| **Plaintiff Ore** | | | | | | |
| 8/24/2020 – 8/30/2020 | $12.50 | $13.00 | $6.50 | 0 | 1 | -- |
| 8/31/2020 – 9/13/2020 | $12.50 | $13.00 | $6.50 | 9 | 2 | $117 |
| 9/14/2020 – 12/30/2020 | $12.50 | $13.00 | $6.50 | 14 | 15 | $1,365 |
| 12/31/2020 – 1/17/2021 | $12.50 | $14.00 | $7.00 | 14 | 3 | $294 |
| 1/18/2021 – 5/30/2021 | $13.00 | $14.00 | $7.00 | 24 | 19 | $3,192 |
| 5/31/2021 – 11/7/2021 | $13.00 | $14.00 | $7.00 | 20 | 23 | $3,220 |
| 11/8/2021 – 11/10/2021 | $13.00 | $14.00 | $7.00 | 0 | 1 | -- |
| **Total unpaid overtime wages** | | | | | | **$8,188** |
| **Plaintiff Rosas** | | | | | | |
| 1/15/2021 – 1/17/2021 | $13.00 | $14.00 | $7.00 | 0 | 1 | -- |
| 1/18/2021 – 5/16/2021 | $13.00 | $14.00 | $7.00 | 0 | 17 | -- |
| 5/17/2021 – 5/23/2021 | $13.00 | $14.00 | $7.00 | 36 | 1 | $252 |
| 5/24/2021 – 6/27/2021 | $13.00 | $14.00 | $7.00 | 44 | 5 | $1,540 |
| 6/28/2021 – 7/4/2021 | $13.00 | $14.00 | $7.00 | 32 | 1 | $224 |
| 7/5/2021 – 8/29/2021 | $13.00 | $14.00 | $7.00 | 32 | 8 | $1,792 |
| 8/30/2021 – 9/5/2021 | $13.00 | $14.00 | $7.00 | 17 | 1 | $119 |
| 9/6/2021 – 11/7/2021 | $13.00 | $14.00 | $7.00 | 2 | 9 | $126 |
| 11/8//2021 – 11/10/2021 | $13.00 | $14.00 | $7.00 | 0 | 1 | -- |
| **Total unpaid overtime wages** | | | | | | **$4,053** |

Based on the above calculations, I respectfully recommend that the Court award Ore $8,188 and Rosas $4,053 for total unpaid overtime wages.

### C. Unpaid Spread-of-Hours

Plaintiffs seek spread-of-hours pay under the NYLL. (Compl. ¶¶ 95–100; Pls.' Mem. at 17). Pursuant to the NYLL, employees are entitled to an additional hour of pay at the minimum wage

rate for each day an employee's spread of hours exceeded ten hours. 12 N.Y.C.C.R. § 142-2.4; *see*

*Fermin*, 93 F. Supp. 3d at 46. Both Plaintiffs worked days in which their spread of hours exceeded

ten hours. Ore worked twelve-hour shifts, five days per week, from January 18, 2021 to November

7, 2021, and three days per week from November 8, 2021 to November 10, 2021. (Compl. ¶¶ 27–

29; Ore Decl. ¶¶ 19–21). Rosas worked twelve-hour shifts, seven days per week, from May 18,

2021 to June 30, 2021; and twelve -hour shifts, six days per week from July 1, 2021 to September

1, 2021. (Compl. ¶¶ 43–44; Rosas Decl. ¶¶ 18–19). Accordingly, both Plaintiffs are entitled to one

extra hour of pay at the then-applicable minimum wage for each day that they worked more than

ten hours per day. The Court calculates the spread of hours pay owed to each Plaintiff as follows:

| Pay Period | Weeks Worked | Spread of Hours Days Per Week | Applicable Min. Wage | Spread of Hours Wages Owed |
|---|---|---|---|---|
| **Plaintiff Ore** | | | | |
| 8/24/2020 – 8/30/2020 | 1 | 0 | $13 | -- |
| 8/31/2020 – 9/13/2020 | 2 | 0 | $13 | -- |
| 9/14/2020 – 12/27/2020 | 15 | 0 | $13 | -- |
| 12/28/2020 – 12/30/2020 | 1 | 0 | $13 | -- |
| 12/31/2020 – 1/3/2021 | 1 | 0 | $14 | -- |
| 1/4/2021 – 1/17/2021 | 2 | 0 | $14 | -- |
| 1/18/2021 – 5/30/2021 | 19 | 5 | $14 | $1,330 |
| 5/31/2021 – 11/7/2021 | 23 | 5 | $14 | $1,610 |
| 11/8/2021 – 11/10/2021 | 1 | 3 | $14 | $42 |
| **Total unpaid spread of hours wages** | | | | **$2,982** |
| **Plaintiff Rosas** | | | | |
| 1/15/2021 – 1/17/2021 | 1 | 0 | $14 | -- |
| 1/18/2021 – 5/16/2021 | 17 | 0 | $14 | -- |
| 5/17/2021 – 5/23/2021 | 1 | 6 | $14 | $84 |
| 5/24/2021 – 6/27/2021 | 5 | 7 | $14 | $490 |
| 6/28/2021 – 7/4/2021 | 1 | 6 | $14 | $84 |
| 7/5/2021 – 8/29/2021 | 8 | 6 | $14 | $672 |
| 8/30/2021 – 9/5/2021 | 1 | 3 | $14 | $42 |
| 9/6/2021 – 11/7/2021 | 9 | 0 | $14 | -- |
| 11/8//2021 – 11/10/2021 | 1 | 0 | $14 | -- |
| **Total unpaid spread of hours wages** | | | | **$1,372** |

Based on these calculations, I respectfully recommend awarding Ore $2,982 in unpaid spread of hours wages, and awarding Rosas $1,372 in unpaid spread of hours wages under the NYLL.

    D. Liquidated Damages

Plaintiffs claim entitlement to liquidated damages under the FLSA and NYLL, but request damages solely under the NYLL. (Pls.' Mem. at 19–21; Compl. at 14). Under the FLSA, a plaintiff can collect "liquidated damages awards equaling one-hundred percent of wages due." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 184 (E.D.N.Y. 2019) (citing 29 U.S.C. § 260), unless "the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260). The NYLL similarly permits recovery of "liquidated damages 'equal to one hundred percent of the total amount of the wages found to be due,' unless the employer provides a good faith basis for believing he or she was in compliance with the law." *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *23 (E.D.N.Y. Sept. 22, 2017) (citations omitted). "[A]n employer who defaults, as Defendants have, fails to make a showing of good faith." *Santos*, 2022 WL 1003812, at *7 (citations omitted); *see also Chopen v. Olive Vine, Inc.*, No. 12-CV-2269 (NGG) (MDG), 2015 WL 1514390, at *10 (E.D.N.Y. Mar. 13, 2015) ("As the defendants have here defaulted, they have not shown they acted in good faith."), *adopted as modified by* 2015 WL 1542082 (Mar. 31, 2015).

Here, Defendants are in default and have not alleged that their failure to pay Plaintiffs minimum wage, overtime compensation, or spread of hours wages was in good faith, nor that they had reasonable grounds for believing that they were in compliance with the law. Accordingly, Plaintiffs are entitled to recover liquidated damages, and I respectfully recommend that the Court

award Plaintiffs one hundred percent of the minimum wage, overtime, and spread-of-hours damages that they are entitled to under the NYLL, amounting to a liquidated damages award of $14,481 for Ore and $7,513 for Rosas.

### E. Statutory Damages

Plaintiffs seek statutory damages under the NYLL for wage-notice and wage statement violations. (Compl. ¶¶ 101–108; Pls.' Mem. at 17–18). Pursuant to the NYLL, employers are required to notify their employees of "the rate or rates of pay and basis thereof." N.Y. Lab. Law § 195(1). This notice must be "in writing in English and in the language identified by each employee as the primary language of such employee." *Id.* If an employee is not provided this wage notice within "ten business days of [their] first day of employment," they may recover in civil damages, fifty dollars for each work day that this violation occurred, up to a maximum of five thousand dollars, or equivalent of 100 work days. N.Y. Lab. Law § 198(1-b). An employer must also provide its employees with a wage statement for "every payment of wages" listing "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; [and] rate or rates of pay and basis thereof[.]" N.Y. Lab. Law § 195(3). If an employee does not receive such wage statements, they are entitled to recover "damages of two hundred fifty dollars for each work day that the violations occurred" up to a maximum of five thousand dollars, or the equivalent of twenty work days. N.Y. Lab. Law § 198(1-d).

Here, Plaintiffs allege that they were not provided with any type of wage notice, at the time of hiring or otherwise, in English or in their primary language, nor were they provided with accurate wage statements. (Compl. ¶¶ 52–53, 102, 106; Ore Decl. ¶¶ 28–29; Rosas Decl ¶ 26). Plaintiffs' allegations sufficiently show that Defendants were not compliant with the NYLL wage notice and wage statement requirements for the entirety of their employment. *See Santos*, 2022

29

WL 1003182, at *7–8 (finding similar allegations in plaintiffs' complaint sufficiently showed wage notice and wage statement violations under NYLL); *Kantor v. Air Atl. Med., P.C.*, No. 19-CV-3597 (EK) (ST), 2021 WL 3888067, at *9 (E.D.N.Y. July 7, 2021) (same), *adopted by* 2021 WL 3884193 (Aug. 31, 2021). Because Defendants failed to provide Ore and Rosas with the required wage notice and the required wage statements for 443 days (between August 24, 2020 and November 10, 2021) and 299 days (between January 15, 2021 and November 10, 2021), respectively, I respectfully recommend that the Court award each Plaintiff the maximum statutory damage award of $5,000 for violations of NYLL § 195(1) and $5,000 for violations of NYLL § 195(3), for a total of $10,000 in statutory damages each.

### F.   Pre- and Post-Judgment Interest

Plaintiffs request pre- and post-judgment interest on their compensatory damages under the NYLL. (Pls.' Mem. at 21–23; Compl. ¶¶ 88, 94, 100). "[T]he NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin*, 93 F. Supp. 3d at 48. Plaintiffs may recover pre-judgment interest on claims for unpaid minimum wages, overtime wages, and spread-of-hours damages, but not on liquidated or statutory damages. *See, e.g.*, *Palaghita*, 2021 WL 4464121, at *12; *Calle v. Yoneles Enter., Inc*., No. 16-CV-1008 (NGG) (RLM), 2017 WL 6942652 (E.D.N.Y. Oct. 24, 2017), at *17 (awarding prejudgment interest on plaintiff's withheld wages, overtime wages and spread-of-hours damages). In New York, pre-judgment is calculated at "the rate of nine per centum annum." N.Y. C.P.L.R. § 5004, and courts "have 'wide discretion in determining a reasonable date from which to award pre-judgment interest.'" *Fermin*, 93 F. Supp. 3d at 49 (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)). Courts in the Second Circuit frequently calculate pre-judgment interest from the midpoint of claims. *See Id.*; *Martinez*, 2017 WL 5033650, at *24 (quoting N.Y. C.P.L.R. § 5001(b)) ("Where . . . violations of the NYLL

occur over an extended period, courts calculate prejudgment interest from a 'single reasonable intermediate date.'"). The midpoint date typically falls "between when 'plaintiff[s] began and ceased working for defendant[s.]" *Santillan*, 822 F. Supp. 2d at 298 (alterations in original) (quoting *Pavia v. Around The Clock Grocery, Inc.*, No. 03-CV-6465 (ERK) (CLP), 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005)); *see also Martinez*, 2017 WL 5033650, at *24 (calculating pre-judgment interest from the midway point of each plaintiff's employment).

Based on these standards, the Court will calculate pre-judgment interest owed to Ore from April 2, 2021, which is the midpoint between her start date of August 24, 2020, and end date of November 10, 2021 (Compl. ¶ 20; Ore Decl. ¶ 12), and will calculate pre-judgment interest owed to Rosas from June 13, 2021, which is the midpoint between his start date of January 15, 2021, and end date of November 10, 2021 (Compl. ¶ 37; Rosas Decl. ¶ 12). This Court calculates "[p]re-judgment interest . . . using the following formula: (total compensatory damages due to plaintiff) X (.09/365) X (number of days from midpoint date to the date the Clerk of the Court enters judgment)." *Diaz*, 2022 WL 4646866, at *12 n.13; *see also Fermin*, 93 F. Supp. 3d at 50. Accordingly, I respectfully recommend that Ore be awarded $2,217.38 in pre-judgment interest plus $3.57 per diem[4] until the date that judgment is entered, and Rosas be awarded $1,017.03 in pre-judgment interest plus $1.85 per diem[5] until the date that judgment is entered.

---

[4] As to Ore, pre-judgment interest is calculated to date as follows: Total Compensatory Damages ($14,481) X (.09/365) X (621 [days between midpoint date 4/2/2021 and 12/14/2022]) = $2,217.38.

Per diem interest is calculated as follows: Total Compensatory Damages ($14,481) X (0.09 / 365) = $3.57 per diem.

[5] As to Rosas, pre-judgment interest is calculated to date as follows: Total Compensatory Damages ($7,513) X (.09/365) X (549 [days between midpoint date 6/13/2021 and 12/14/2022]) = $1,017.03.

Per diem interest = $7,513 X (0.09 / 365) = $1.85 per diem.

Plaintiffs are also entitled to post-judgment interest under 28 U.S.C. § 1961. Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co., Inc. v. Loc. 137 Sheet Metal Workers Intl. Assn.*, 852 F.3d 217, 223 (2d Cir. 2017) (quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)); *see also Fermin*, 93 F. Supp. 3d at 53 ("The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." (quoting *Duffy v. Oyster Bay Indus., Inc.*, No. 10-Civ.-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *adopted by* 2011 WL 2259749 (June 2, 2011)). Thus, I respectfully recommend that Plaintiffs be awarded post-judgment interest, to be calculated from the date the judgment in this action is entered until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

### G. Automatic Fifteen Percent Increase

Plaintiffs claim that under the NYLL, the total amount of the judgment should automatically increase by fifteen percent if it is not paid within ninety days after the judgment is entered. (Pls.' Mem. at 23); *see* N.Y. Lab. Law §§ 198(4); 663(4) ("[I]f any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."). However, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see Silge*, 510 F.3d at 158 (affirming a district court's application of Rule 54(c) in precluding "recovery to the extent it would result in an award exceeding the amount prayed for in the [complaint]"); *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993). Here,

Plaintiffs' complaint is silent as to an automatic fifteen percent increase or other late-payment penalty under NYLL §§ 198(4) or 66(3) and they only requested this relief in their Motion for Default Judgment after the Defendants defaulted. Accordingly, pursuant to Federal Rule of Civil Procedure 54(c), I respectfully recommend that Plaintiffs' request for such an increase be denied.

## **CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Motion be granted in part and denied in part to the extent set forth in this Report and Recommendation. I recommend that default judgment be entered on Plaintiffs' FLSA and NYLL claims, and that Corporate Defendant be held liable for damages. I respectfully recommend that Ore be awarded a total of $41,179.38 in damages, comprised of: $3,311 in unpaid minimum wages, $8,188 in unpaid overtime wages, $2,982 in unpaid spread-of-hours wages, $14,481 in liquidated damages, $10,000 in statutory damages; $2,217.38 in pre-judgment interest plus $3.57 per diem until the date that judgment is entered, and post-judgment interest in accordance with 28 U.S.C. § 1961; and that Rosas be awarded $26,043.03, comprised of: $2,088 in unpaid minimum wages, $4,053 in unpaid overtime wages, $1,372 in unpaid spread-of-hours wages, $7,513 in liquidated damages, $10,000 in statutory damages, $1,017.03 in pre-judgment interest plus $1.85 per diem until the date that judgment is entered, and post-judgment interest in accordance with 28 U.S.C. § 1961.

Should Plaintiffs properly serve the Motion for Default Judgment and a copy of this Report and Recommendation upon the Individual Defendant, and file proof of compliance with the Servicemembers Civil Relief Act, Federal Rule of Civil Procedure 4, and Local Civil Rule 55.2(c), I recommend that both Individual and Corporate Defendants be held jointly and severally liable for damages.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Ann M. Donnelly within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.

**_/s/ Ramon E. Reyes, Jr._**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: December 14, 2022
Brooklyn, NY

34